**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **PATRICIA BARNEY,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | Civil Action No. 7:03-CV-0086-BH(R) |
| **JO ANNE B. BARNHART,** § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY,** § | |
| § | |
| **Defendant.** § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the provisions of Title 28, United States Code, Section 636(c), and an Order of the Court in implementation thereof, subject cause has been transferred to the undersigned United States Magistrate Judge. Before this Court are *Brief for Plaintiff* ("Pl.'s Br."), filed September 30, 2003; *Defendant's Motion for Summary Judgment* and *Memorandum Brief in Support of Defendant's Motion for Summary Judgment* ("Def.'s Br."), filed January 30, 2004; and *Plaintiff's Reply Brief*, filed February 2, 2004. Having reviewed the evidence of the parties in connection with the pleadings, the Court finds that Plaintiff's *Brief for Plaintiff* should be **DENIED,** *Defendant's Motion for Summary Judgment* should be **GRANTED**, and the final decision of the Commissioner should be **AFFIRMED**.

## I. BACKGROUND[1]

**A.     Procedural History**

Patricia Barney ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. Plaintiff filed an application for disability benefits under Title II and Title XVI of the Social Security Act on August 21, 1995. (Tr. at 93-100.) Plaintiff claimed she was disabled due to hypertension, heart attack, stress, and anxiety. (Tr. at 113.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 73-92.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 71.) A hearing, at which Plaintiff personally appeared and testified, was held on November 21, 1997. (Tr. at 26-38) On February 24, 1998, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 225-36.)

On February 22, 2000, the Appeals Council granted Plaintiff's request for review, and remanded the case to the ALJ for further development of the record and a new hearing. (Tr. at 250.) A new hearing was held before the ALJ on September 14, 2000. (Tr. at 39-70.) On January 26, 2001, the ALJ issued a new decision finding Plaintiff not disabled. (Tr. at 14-20.) On April 18, 2003, the Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 5-8.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 5.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on May 12, 2003.

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

**B.    Factual History**

    1.    Age, Education, and Work Experience

Plaintiff was born on May 24, 1940.  (Tr. at 42.)  At the time of the second hearing before the ALJ, she was sixty years old.  *Id.*  She graduated high school and attended college for a year and a half.  (Tr. at 44.)  She previously worked as a case manager for a prison facility.  (Tr. at 45.)

    2.    Medical Evidence[2]

On October 24, 1995, Plaintiff was evaluated by Jerome M. Adams, M.D.  (Tr. at 175-76.) Plaintiff reported marked exertional dyspnea.  (Tr. at 175.)  Plaintiff also complained of chest pain with increased exertion.  *Id.*  Plaintiff's blood pressure was 170/110 on two separate readings.  *Id.* Plaintiff's heart exhibited normal sinus rhythm.  (Tr. at 176.)  There was equivocal cardiomegaly with the PMI slightly shifted to the left.  *Id.*  The exam was suggestive of cardiomegaly by percussion. *Id.*  In addition, Plaintiff described pain and swelling of both knees with crepitus and popping.  (Tr. at 175.)  Dr. Adams found substantial subpatellar crepitus.  (Tr. at 176.)  Plaintiff was able to squat to forty-five degrees.  *Id.*  Dr. Adams concluded that Plaintiff's ability to perform sitting work activities was minimally impaired.  *Id.*  Plaintiff's ability to work standing was moderately limited by dizziness and back pain.  *Id.*  Plaintiff's ability to move about, lift, carry, and handle objects was severely limited by angina and dyspnea.  *Id.*

An exercise treadmill stress test was performed on January 16, 1996.  (Tr. at 180.)  After one minute twenty-one seconds, the test was terminated due to Plaintiff's shortness of breath.  *Id.* Resting EKG revealed normal sinus rhythm and Plaintiff's resting blood pressure was 125/86.  *Id.*

---

[2]Although the record contains medical evidence from Plaintiff's treating sources, both the ALJ in his decision and Plaintiff in her brief, relied primarily on the reports of the consultative examiners.  Because the issue presented in this case is primarily procedural, rather than evidentiary, the Court limits its discussion of the medical evidence to those reports.

At peak exercise, Plaintiff's blood pressure was 168/90. *Id.* The results of the test were inconclusive. *Id.*

Another consultative examination was performed on March 31, 2000, by Julian C. Sleeper, M.D., F.A.C.C. (Tr. at 332-33.) Plaintiff's heart was borderline, 9 centimeters to the left midsternal line by percussion. (Tr. at 332.) Dr. Sleeper heard no murmurs, clicks, gallops, or arrhythmia. *Id.* An EKG showed sinus rhythm, eighty per minute, with a single APC. *Id.* Plaintiff's previous myocardial infarction was not apparent on the test. *Id.* Dr. Sleeper opined that Plaintiff had hypertensive cardiovascular disease and a history of coronary heart disease. *Id.* He noted that Plaintiff's chest pain was somewhat atypical and felt that additional testing might be required to evaluate her cardiac status. *Id.* In evaluating Plaintiff's ability to perform work-related activities, Dr. Sleeper concluded she could occasionally lift twenty pounds, could stand and/or walk less than two hours in an eight hour workday, and that sitting was unaffected. (Tr. at 337.)

### 3. Hearing Testimony

Plaintiff's second hearing took place on September 14, 2000. (Tr. at 39.) The ALJ heard testimony from Plaintiff and a vocational expert. *Id.* Plaintiff was represented by counsel at the hearing. *Id.*

Plaintiff testified that she was sixty years old on the day of the hearing. (Tr. at 42.) She stated that she had worked as a case manager for a prison facility. (Tr. at 45-46.) Her work included maintaining files of 100 to 175 inmates, counseling the inmates in preparation for parole, and delivering the files to the Parole Board. (Tr. at 46.)

Plaintiff had a heart attack in 1989, but was able to return to work. (Tr. at 47.) In 1993, she stopped working because of stress, chest and back pain, and shortness of breath. (Tr. at 48.)

Plaintiff stated she was easily tired and suffered chest pain (Tr. at 49, 51.) She needed to rest three hours a day due to fatigue. (Tr. at 54.) Plaintiff also testified that she had pain and swelling in her knees, making it difficult to walk on occasion. (Tr. at 55.) She could not walk two blocks due to pain in her knees and shortness of breath. (Tr. at 63.)

The Vocational Expert ("VE") stated that Plaintiff's past relevant work as a pre-parole counseling aid was skilled and primarily performed at the sedentary level, with some light work involved. (Tr. at 67.) He testified that Plaintiff's skills would transfer to the sedentary, semiskilled jobs of receptionist and employment clerk. (Tr. at 68.) However, the VE noted that the jobs he proffered were in different fields from Plaintiff's past work, and were performed in different settings. *Id.* Similarities between Plaintiff's past work and the suggested clerical jobs including exchanging information and the intake of information. (Tr. at 68-69.)

**C.    ALJ's Findings**

The ALJ issued his second decision denying benefits on January 26, 2001. (Tr. at 14-20.) In his findings, he determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability, March 22, 1993. (Tr. at 18.) The ALJ determined that Plaintiff's cardiovascular and diabetic problems had significantly restricted her ability to do basic work activities. *Id.* However, the ALJ also found that Plaintiff's allegations of pain "were significantly greater than that which can be reasonably anticipated based upon the objective medical evidence of record." *Id.*

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. *Id.* Specifically, the ALJ found that Plaintiff was capable of lifting no more than ten pounds, could sit for six hours out of an eight-hour workday, and could walk and

stand for no more than two hours out of an eight-hour work day. *Id.*

The ALJ concluded that, due to Plaintiff's RFC, she could not return to her past relevant work. (Tr. at 18.) The ALJ noted that Plaintiff was 60 years old, which was considered a person closely approaching retirement age. *Id.* He noted that "[t]he vocational expert testified . . . that [Plaintiff] had work skills that [were] transferable to sedentary labor." *Id.* He found that Plaintiff could make a vocational adjustment to the jobs of receptionist and appointment clerk. (Tr. at 18-19.) As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 19.)

## II. ANALYSIS

**A.     Legal Standards**

1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, but less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson*

*v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

2. <u>Disability Determination</u>

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

      4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

      5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B.   *Issue for Review*

Plaintiff alleges that substantial evidence does not support the Commissioner's finding that she was not disabled because the Commissioner failed to meet her burden of proof to show jobs existing in significant numbers which Plaintiff could perform, considering her age, education, and work experience. In particular, Plaintiff asserts that the ALJ erred in finding that she could perform other jobs without first making a finding that she had acquired skills which were transferable to such

jobs.[3]

When a claimant meets her burden of proof by demonstrating an inability to perform her past work, the burden shifts to the Commissioner to show that there is other work in the national economy which the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). To prove that a claimant can perform other work available in the national economy, the Commissioner must consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f)(1). The way in which a claimant's age affects this determination is set forth in 20 C.F.R. § 404.1563. The regulation imposes a progressively more stringent burden on the Commissioner before she can deny disability benefits as claimants become older. *See* 20 C.F.R. § 404.1563, 20 C.F.R. § 404.1568(d)

Pursuant to 20 C.F.R. § 404.1568(d)(4), if a claimant is older than 55 and is severely impaired so as to limit her to sedentary or light work, the Commissioner will find that she cannot make an adjustment to other work unless she has skills which are transferable to other skilled or

---

[3] The only issue raised by Plaintiff before the Appeals Council, and before this Court, was whether substantial evidence supported the ALJ's finding as to the transferability of Plaintiff's skills to other work at the time her insured status for Title II benefits expired. As previously noted, Plaintiff applied for benefits under both Title II and Title XIV of the Social Security Act. Because Plaintiff was over sixty years old at the time of the ALJ's second decision, a different standard would be applicable to her claim for Title XVI benefits than the one used by the ALJ. Because she did not raise this issue before the Appeals Council, however, it is not considered by the Court. *See McQueen v. Apfel*, 168 F.3d 152, 155 (5th Cir. 1999) (noting that a court should not review the Commissioner's final decision unless the claimant has exhausted her administrative remedies, and that a claimant fails to exhaust her administrative remedies if she does not raise a claim of error to the Appeals Council before filing suit).

semiskilled work that she can perform despite her impairments.[4]  A claimant has transferable skills "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1).  However, a claimant's skills will be found to be transferable "only if the sedentary work is so similar to [the claimant's] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R.  § 404.1568(d)(4).  In discussing whether work skills are transferable, SSR 82-41 notes that job skills "unique to a specific work process in a particular industry or work setting" require more than a minimal vocational adjustment.  SSR 82-41, 1982 WL 31389, *6.  However,

> where job skills have universal applicability across industry lines, e.g. clerical, professional, administrative, or managerial type jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

*Id.*

At the time Plaintiff's insured status for Title II benefits expired, Plaintiff was 58 years old.  (Pl.'s Br. at 2.)  Accordingly, in order to find that Plaintiff could perform other work, the ALJ was required to find Plaintiff had transferable skills.  *See* 20 C.F.R. § 404.1568(d)(4).  Plaintiff asserts that because the ALJ did not elicit specific testimony from the VE concerning the amount of vocational adjustment required to transfer her skills to the proposed jobs, substantial evidence does not support the ALJ's determination as to disability.  (Pl.'s Br. at 15.)

This issue has been considered by other courts.  In *Huff v. Shalala*, 1994 WL 776889 (S.D.

---

[4] At the time Plaintiff's insured status for Title II benefits expired, Plaintiff was 58 years old.  (Pl.'s Br. at 2.)

Miss. Sept. 30, 1994), the court addressed whether substantial evidence supported an ALJ's decision to adopt the VE's opinion that the plaintiff had skills which were transferable to other jobs. 1994 WL 776889 at 3. The plaintiff in that case asserted that the ALJ's failure to make a specific finding that her skills would transfer with very little vocational adjustment required remand. *Id.* The *Huff* court noted that the ALJ specifically mentioned the issue of the plaintiff's age to the VE and that the VE concluded that the plaintiff had transferable skills. *Id.* Additionally, the court noted that the skills identified were not unduly narrow or industry-specific, but that they were skills with universal applicability across industry lines requiring little vocational adjustment, if any. *Id.* For these reasons, the court concluded that a finding of very little vocational adjustment could be inferred from the record, and that because the record supported the ALJ's conclusions, there was no reversible error. *Huff*, 1994 WL 776889 at *3.

A contrary conclusion was reached in *Nielson v. Sullivan*, 992 F.2d 1118 (10th Cir. 1993). However in that case, the VE was erroneously told that Plaintiff was not of advanced age and was given no opportunity to consider the issue of vocational adjustment to other work. *Nielson*, 992 F.2d at 1121. In another case, *Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986), the court also held that the failure to make a finding as to vocational adjustment was reversible error. However, that court noted that the jobs suggested appeared to require adjustment to new industries and work settings. *Id.*

The facts in the instant case are more similar to those in *Huff*. Here, the VE testified that Plaintiff's past work was skilled and that her skills would transfer to the sedentary, semiskilled jobs of receptionist and employment clerk. (Tr. at 67-68.) In particular, the VE stated that Plaintiff's

skills in exchanging information and the intake of information would transfer to the job of receptionist. (Tr. at 68-69.) Plaintiff's counsel questioned the VE further about the fact that the proposed jobs were in different fields and settings from Plaintiff's past work. *Id*. Although the VE did not specifically state that Plaintiff could make a vocational adjustment to those jobs, as in *Huff*, such a conclusion may be inferred from his response. Plaintiff's counsel did not pursue the issue. Additionally, the jobs proposed by the VE are in the clerical field and the VE testified that Plaintiff had transferable clerical skills. (Tr. at 67-68.) As noted above, the Commissioner regards clerical skills as having universal applicability across industry lines and that "transferability of such skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment." SSR 82-41, 1982 WL 31389 at *6.

Although the Court agrees that the best practice is for the ALJ to make a specific finding as to vocational adjustment to other work, "procedural perfection in administrative proceedings is not required." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Rather, reversal is only appropriate when the substantial rights of a party have been affected. *Id.* In this case, the VE acknowledged that the jobs of receptionist and employment clerk were in different fields and settings from Plaintiff's past work but did not opine that such transfer would require more than a little vocational adjustment. The Commissioner's rules state that clerical skills are the type of skills which are presumed to be readily transferable with little vocational adjustment. Plaintiff's brief does not claim that such vocational adjustment would be needed. Considering these facts and the record as a whole, the Court follows the reasoning in *Huff* and concludes that the failure to make a specific finding as to vocational adjustment did not affect Plaintiff's substantial rights and that, therefor, substantial evidence supports the Commissioner's disability determination.

### III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this the 18th day of November, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE